ing his right to review the determination unimpaired. The case of Goldstein v. Goldsmith, 28 Misc. Rep. 569, 59 N. Y. Supp. 677, on which the respondents rely, is not to the contrary. In that case it was held that where the defendant, upon the return day of a summons in the Municipal Court, appeared specially to object to the jurisdiction, and, after making an ineffectual attempt to prove nonservice of the summons, obtained time to plead, and thereafter interposed an answer, he. should be deemed to have made a voluntary appearance. The interposition of the answer was regarded by the Appellate Term as an election on the part of the defendant not to suffer a default judgment to be taken against him. The court said (page 571, 28 Misc. Rep., page 679, 59 N. Y. Supp.):

"Had the defendant stood upon his objection, and, upon the justice's refusal to pass upon the merits of the affidavits presented upon the subject of service, suffered a default judgment to be taken, and then carried his appeal to this court, we would have been called upon to direct a reversal. He was not bound to answer when the court refused to entertain the application to dismiss. It was optional for him to appeal, or to appear and answer. He chose the latter alternative, and thereby abandoned the former."

The course adopted by the defendant in the case at bar was the opposite of that criticised in the case cited. By relieving the plaintiffs from their default, he merely suffered them to take his, and, neither appearing nor pleading, cannot be regarded as having waived his right to review either the first or the final adverse ruling of the court.

The judgment and order should be reversed, the attachment vacated, and the complaint dismissed, in accordance with the provisions of section 90, c. 580, p. 1519, of the act in relation to the Municipal Court, supra. J. H. Mohlman Co. v. Landwehr, supra.

Judgment and order of the Municipal Court reversed, with costs, attachment vacated, and complaint dismissed. All concur.

---

### QUINN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—CAR REPAIRERS—RULES—KNOWLEDGE—VERDICT.

Where, in an action for injuries to a car repairer, plaintiff charged that defendant was negligent in failing to promulgate rules intended to protect plaintiff while engaged in work under the car, and defendant proved by a single witness that plaintiff had signed a private book kept by defendant's foreman, containing a rule requiring repair signs to be placed on cars in process of repair, while plaintiff denied that such book had ever been brought to his notice, or that he had ever signed the same, a verdict in favor of plaintiff on such issue was not contrary to the weight of evidence, though there were more witnesses who testified to the existence of the book than there were who denied it.

2. SAME—QUESTION FOR JURY.

Where plaintiff, a car repairer, claimed that defendant was guilty of negligence in failing to provide rules for plaintiff's protection while he was working under cars in making repairs, and such rules, if any existed, had never been brought to plaintiff's knowledge, he was entitled to go to the jury on the question whether defendant had exercised reasonable care in providing him with a reasonably safe place to work, though defendant

proved that the shop foreman had adopted rules, which were contained in a book in the foreman's office, but which were not shown to have been published or brought to the attention of plaintiff and other employés.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

Where plaintiff, a car repairer, before going under a defective car to repair the same, removed the trolley pole from the wire, and, on his returning to work after luncheon, observed that the pole was still off the wire, and he was thereafter injured by the motorman starting the car without notice to him, plaintiff was not guilty of contributory negligence, as a matter of law, in not again looking to see whether the pole was off the wire, shortly before the accident, after he had gone a short distance for a piece of material to use in the work.

**4. SAME—CAR STARTER—VICE PRINCIPAL—NEGLIGENCE.**

Where a car starter, whose duty it was to select street cars to be used, directed the motorman to start out a car which was defective, and which plaintiff was engaged in repairing, without notice to plaintiff, the starter's negligence was that of a vice principal, and not a fellow servant of plaintiff, for which defendant was liable.

**5. SAME—WITNESSES—CROSS-EXAMINATION.**

Where, in an action for injuries to a car repairer, plaintiff admitted that the car could not have been moved without placing the trolley on the wire —the negligence alleged consisting in moving the car without notice to plaintiff, or without the publication of rules to afford plaintiff reasonable protection—it was not error to refuse to permit defendant, on cross-examination of the motorman who moved the car, sworn as plaintiff's witness, to prove that he put the trolley on the wire, and that the car was lighted when he went into the same.

**6. SAME—RULES—SIGNING—CUSTOM—EVIDENCE.**

Where, in an action for injuries to a car repairer, negligence was predicated on defendant's failure to promulgate rules for the protection of repairers, and defendant claimed that such rules had been adopted, and had been signed by plaintiff, which he denied, but no rules promulgated before the accident were introduced, it was not error to refuse to permit defendant to prove that it was ·customary in defendant's shop for persons to sign rules promulgated by the shop foreman.

**7. SAME—SECONDARY EVIDENCE.**

Where, in an action for injuries to a car repairer, it was claimed that a book containing alleged rules made for the protection of car repairers had been lost, it was proper to refuse to admit the whole of a book of alleged rules, conceded to have been prepared since the accident, which was claimed to be similar to the book lost, though admitted to contain rules which were not in the original.

**8. SAME—DAMAGES—EXCESSIVENESS.**

A verdict for $8,000 for injuries to the foot of a car repairer, necessitating amputation, was not excessive.

Appeal from Special Term, New York County.

Action by Peter Quinn against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

I. R. Oeland, for appellant.
James C. Cropsey, for respondent.

WOODWARD, J. The plaintiff in this action was seriously injured in his foot—warranting, it is claimed, amputation—while engaged in repairing cars for the defendant at its Flatbush Avenue De-

pot, in the borough of Brooklyn, on the 14th day of February, 1901. There is no substantial dispute about the accident, the principal questions relating to the defendant's liability for the damages resulting from the accident, under the admitted circumstances. It appears that a car standing in the depot, about 300 feet from Flatbush avenue, required what is known as a "repair piece," which seems to be a loop of iron adjusted over a wheel for the purpose of preventing the trucks getting out of place, and the plaintiff was directed to attend to this work. He says that he went to the car, which was in the repair shop, at about half past 11 o'clock in the morning, took the trolley pole off the wire, so that he would not receive a shock in the event of a wire becoming grounded, and began work. At noon he went to luncheon, and on returning to the shop he noticed that the trolley pole was still free from the wire. He afterward went to look after something necessary to the work, and resumed his task at the side of the car. In adjusting the repair piece, he had to use an iron bar as a lever to spring the iron into place; and he was down on the floor, at the side of the car, with one of his feet just in front of the forward wheel of the rear truck of the car. While in this position, and without any warning, the motorman, acting under the direction of the starter, suddenly moved the car; the wheels of the rear truck passing over the plaintiff's foot, producing the injuries mentioned above. Upon the trial the jury brought in a verdict for $8,000, and from the judgment entered the defendant appeals, as well as from the order denying a motion for a new trial.

The negligence of the defendant was predicated upon the absence of rules intended to protect the plaintiff while engaged in this work, or a failure on the part of the defendant and its servants to give any warning of an intention to move this car. The plaintiff put in evidence the printed rules of the defendant in reference to the operation of its cars, etc., but there is no provision covering the conduct of car repairers contained in these rules. The defendant, however, introduced evidence intended to establish that its foreman had adopted rules from time to time, which he had recorded in a book which he kept in his office, and which he claimed had been signed by the plaintiff, in which rules were laid down in reference to car repairers. The original book in which these rules were alleged to have been written was not produced, and there was some evidence that there had been a fire in the depot just prior to the accident, and that the witness had not seen this book since the fire; and, upon this basis, secondary evidence of the contents of the book was permitted. The plaintiff testified positively that he had never seen such a book, and that he had never signed any such rule; and, although he had worked at this depot for a number of years, he testified positively that he had never seen the "Out of Order" signs which it is claimed were required by the rules to be displayed upon cars undergoing repairs, and he was corroborated upon this point by one witness who had worked in the same place for a long time. An offer of a book conceded to have been prepared since the accident, and which was admitted to contain matters not in the original book, but which was claimed to be similar to the one which was alleged to have been in existence before the

fire, was rejected; and this is one of the grounds now urged for reversal. It is true that there were more witnesses who testified to the existence of the book than there were who denied it; but upon the question of this book ever having been brought to the notice of the plaintiff, and of his having signed the same, defendant's shop foreman testified in the affirmative, and the plaintiff in the negative, and the jury had a clear right to determine which of these men told the truth, and their verdict cannot be said to have been against the weight of evidence. Certainly rules which exist only in a book kept in the office of a shop foreman cannot be said to be controlling upon a man who has never seen or heard of them; and, when the plaintiff had established that the printed rules of the company made no provision looking to his safety, he had shown facts which entitled him to go to the jury upon the question of whether the defendant had exercised reasonable care to provide him a reasonably safe place and reasonable protection in the performance of obviously dangerous work. If there were any rules which had come to the notice of the plaintiff, and he had disregarded those rules, he could not recover; but it was clearly incumbent upon the defendant to show that these special rules, which the foreman appears to have changed at intervals as caprice or judgment dictated, and which were not accessible to all of the employés, as by posting or publication, were brought to the knowledge of the plaintiff, in order to defeat his recovery, if the jury should determine that the defendant had failed in the discharge of its duty to the plaintiff, by not giving him proper general rules or special warning of an intention to move this car. We are of opinion that the plaintiff's evidence presented a question of fact for the jury, and that the verdict is not against the weight of evidence.

We are equally clear that the evidence disclosed facts which justified the jury in drawing the inference that the plaintiff was free from negligence contributing to the accident. It is not the duty of a plaintiff, more than that of the defendant, to take such extraordinary precautions that an accident cannot possibly happen. He is called upon only to exercise reasonable care to protect himself against dangers that are likely to occur in his occupation. The evidence shows that the plaintiff had removed the trolley pole from the wire at the time of going to work; that he had observed that it was still off when he came back from luncheon; and the fact that he did not look again after going a short distance for a piece of material does not constitute negligence, as a matter of law. It was for the jury to say what a reasonably prudent man would or should have done under the circumstances, and, as the evidence is undisputed that the car was started by the motorman, the inference follows necessarily that the question of the trolley being on at the exact moment of his going to work was of no importance, even if it was on, for the car, so far as appears, did not start until it was put in motion by the act of the motorman in the ordinary operation of the car.

In this view of the case, we have only to examine the exceptions. The appellant urges that:

"The court erred in submitting to the jury that the defendant was liable for the negligence of the foreman in instructing the motorman to take the car out.

This being a detail of the work, and the foreman being a competent man, it could not be negligence on the part of the defendant."

In the first place, the charge does not bear the construction which the appellant has placed upon it, and the so-called foreman was not a foreman at all, but a starter. He was the train dispatcher of the defendant's railroad, and was discharging a duty which belonged to the master. It is the duty of the master to furnish cars which are in proper condition, not alone for the passengers, but for their employés. This necessarily involves the duty of selecting the cars to be used, and whoever makes this selection is performing a duty which belongs to the master, and this duty cannot be delegated in such a manner as to relieve the master from responsibility for negligence in the discharge of this duty. Eaton v. N. Y. C. & H. R. R. Co., 163 N. Y. 391, 395, 57 N. E. 609, 79 Am. St. Rep. 600, and authorities there cited. The starter and the car repairer were not fellow servants, within the rule which exempts the master from liability for the negligence of co-servants; and the jury were properly instructed, we believe, that they should take this evidence that the starter directed the motorman to take this particular car out, and that the motorman did so without giving any warning, into consideration, in connection with every other circumstance bearing upon and relevant to it. It had a bearing upon the question of reasonable care in moving the cars in the absence of rules governing the conduct of the repairer, or the conditions which should exist when cars were being repaired. When the master selects a particular car, as it is his duty, he necessarily says that the car is in proper condition to go out. This presupposes an examination of the car to determine its fitness, and the evidence in this case shows that the car was known to have been out of repair by one who had power to direct the acts of the plaintiff; and, if there had been any inspection to determine the fitness of this car for service, it would have been found that the plaintiff had not yet completed the repairs, but was actually performing that work. It seems to us that this was evidence of negligence on the part of the master which was proper to be taken into consideration by the jury, in connection with all the other facts and circumstances in the case, and that the exception does not present error.

It is also suggested that the court erred in refusing to permit the defendant to prove by one of plaintiff's witnesses on cross-examination that he put the pole on the wire, and also in refusing to permit the same witness to testify that the car was lighted when the witness went into the car. There was no issue upon the question of the witness, who was the motorman who took out the car, placing the trolley upon the wire, for the plaintiff admitted that the car could not have been moved without placing the trolley upon the wire. It was the moving of the car without personal notice to the plaintiff, or without the formulation and publication of rules calculated to afford him reasonable protection, upon which the defendant's negligence is predicated. The witness was under cross-examination, and it was within the discretion of the court to limit the examination to matters brought out on the direct examination; and, when it was within the power of the defendant to call the witness to establish any fact important to the defense, the mere fact that the court may have confined the cross-ex-

amination closer than was necessary does not justify a reversal. We do not mean to intimate that in this case the court erred in this respect, for the questions asked were clearly matters of defense, in so far as they had any bearing, and counsel did not call the witness in behalf of the defendant, so that it was evidently not considered of importance to the case.

Equally are we persuaded that the court did not err in refusing to permit witnesses to testify that it was a custom in the defendant's shop for persons to sign the rules promulgated from time to time by the shop foreman. The defendant was permitted to prove that various individuals had signed some alleged rules which the shop foreman had presented to them, and defendant's shop foreman testified that the plaintiff had signed such rules; but this was denied by the plaintiff, and it was clearly not competent for the defendant to prove a special custom in this one shop in support of its theory that the plaintiff had signed such rules. The evidence of any rule governing the conduct of car repairers was uncertain, and there was no occasion for introducing further speculation into the case by testimony of a custom in reference to rules which may or may not have been found to govern, if they had been offered in evidence as they were written. But beyond this, if the jury had believed that there were such rules as had been claimed to be in existence, there was still the question whether the printed rules in a book in the shop foreman's office, and which had been called to the attention of the plaintiff only at the time of his signature, and which were shown by witnesses not to have been commonly observed in the practical operation of the shop, were adequate; whether such rules by the shop foreman, and which were not where they were commonly seen by the employés and never acted upon, constituted reasonable care on the part of the defendant.

It is equally obvious that the court did not err in refusing to admit in evidence a book of alleged rules which concededly had been prepared since the accident, and which, it was claimed, was similar to the one which had been lost. It was admitted that there were rules in this particular book which were not in the original, and, as the whole book was offered in evidence, it was proper that the book should be excluded.

The verdict for $8,000 is not so far excessive, under the facts disclosed by the evidence, as to justify interference with the conclusion of the jury. The judgment and order appealed from should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs. All concur; BARTLETT and JENKS, JJ., in result.